Receipt number AUSFCC-10097666

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| DAIRYLAND POWER COOPERATIVE,<br><br>　　　　　　　　　　Plaintiff,<br>V.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Defendant. | Case No: __24-2135C__<br><br>Judge: _____ |

### COMPLAINT

Plaintiff Dairyland Power Cooperative ("Dairyland"), by and through its counsel, files this complaint against Defendant the United States, and alleges as follows:

### SUMMARY OF DAIRYLAND'S CLAIMS

1.　　This is Dairyland's fourth action for partial breach of contract arising from the failure of the United States Department of Energy ("DOE") to accept and dispose of spent nuclear fuel and high-level radioactive waste. This action seeks recovery of damages incurred by Dairyland after December 31, 2018.

2.　　Pursuant to the Nuclear Waste Policy Act of 1982, 42 U.S.C. § 10101 *et seq*. ("NWPA"), in 1983 the DOE entered into a contract, known as a Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level Waste (the "Standard Contract"), with Dairyland Power Cooperative, the owner of the La Crosse Boiling Water Reactor ("LACBWR") located in Genoa, Wisconsin.  A copy of the Standard Contract is attached as Exhibit 1.

3.　　The Standard Contract obligated DOE to remove and dispose of all of spent nuclear fuel and high-level radioactive waste generated by LACBWR, beginning no later than January 31, 1998. Dairyland possesses approximately 38 metric tons of spent nuclear fuel

from operation of LACBWR. Dairyland possesses no high-level radioactive waste.

4. To date, DOE has failed to remove any of Dairyland's spent nuclear fuel.

5. As a result, Dairyland has suffered and continues to suffer damages.

6. In 2004, Dairyland brought its first lawsuit against the United States for partial breach of the government's obligation to remove and dispose of Dairyland's spent nuclear fuel. *Dairyland Power Coop. v. United States*, No. 04-106C (Fed. Cl.).

7. Pursuant to the United States Court of Appeals for the Federal Circuit's ("Federal Circuit") decision in *Indiana Michigan Power Co. v. United States*, 422 F.3d 1369, 1376 (Fed. Cir. 2005), which limited utilities to only claiming damages incurred through the time of trial, Dairyland sought damages through 2006 (except for a small portion of damages related to the removal of LACBWR's reactor pressure vessel, which were incurred into 2007).

8. On December 23, 2009, the Court issued a decision on Dairyland's first lawsuit in Dairyland's favor for $37,658,902. *Dairyland Power Coop. v. United States*, 90 Fed. Cl. 615 (2009) ("*Dairyland 1*").

9. The Government subsequently appealed the trial court decision. Among other things, the Federal Circuit affirmed the trial court's rulings that all of Dairyland's spent nuclear fuel would have been removed in 1998 absent the breach. *Dairyland Power Coop. v. United States*, 645 F.3d 1363 (2011). On June 24, 2011, the Federal Circuit remanded Dairyland's claim for damages relating to its investment in a potential off-site storage option, Private Fuel Storage ("PFS"), back to this Court. *Id*. On April 27, 2012, this Court reinstated the entirety of Dairyland's claim for damages relating to its investment in Private Fuel Storage. *Dairyland Power Coop. v. United States*, 104 Fed. Cl. 400 (2012). The government moved for reconsideration of that decision, and this Court reaffirmed its decision on July 20,

2012. *Dairyland Power Coop. v. United States*, 106 Fed. Cl. 102 (2012).

10. In December 2012, Dairyland brought a second lawsuit against the United States for partial breach of the government's obligation to remove and dispose of Dairyland's spent nuclear fuel. *Dairyland Power Coop. v. United States*, No. 12-902C (Fed. Cl.) ("*Dairyland 2*").

11. Dairyland's second lawsuit addressed its damages incurred from 2007 through 2012. The parties settled that claim for $73.5 million. As part of that settlement, the parties stipulated that the settlement included all damages offsets for costs Dairyland would have incurred in the non-breach world to have delivered spent fuel to DOE.

12. In December 2018, Dairyland brought a third lawsuit against the United States for partial breach of the government's obligation to remove and dispose of Dairyland's spent nuclear fuel. *Dairyland Power Coop. v. United States*, No. 18-1922C (Fed. Cl.).

13. Dairyland's third lawsuit addressed its damages incurred from 2012 to December 31, 2018. On November 21, 2021, the Court awarded Dairyland $23.1 million, which included Dairyland's damages through December 31, 2018. *Dairyland Power Coop. v. United States*, No. 18-1922C, 2021 WL 5816004 (Fed. Cl. Nov. 21, 2021) ("*Dairyland 3*").

14. Dairyland now brings this suit to recover the significant damages that it has incurred after December 31, 2018.

15. Dairyland has previously paid all amounts owed and otherwise met its obligations under the Standard Contract.

16. DOE has yet to remove any spent nuclear fuel from Dairyland or any other utility.

## JURISDICTION

17. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1491(a)(1). *PSEG Nuclear, LLC v. United States,* 465 F.3d 1343 (Fed. Cir. 2006).

18. DOE's failure to comply with its essential contractual obligation to begin disposing of spent nuclear fuel and high-level radioactive waste constitutes a material breach of its Standard Contract with Dairyland, for which Dairyland may seek recovery of its damages without seeking administrative remedies. In companion decisions entered on August 31, 2020, the Federal Circuit conclusively rejected the Government's exhaustion of remedies jurisdictional defense. *See Northern States Power Co. v. United States,* 224 F.3d 1361 (Fec. Cir. 2000); *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336 (Fed. Cir. 2000).

## PARTIES

19. Plaintiff Dairyland is an electric generation and transmission cooperative that provides electrical power to 24 member electric distribution cooperatives and 27 member municipal electric utility located in Wisconsin, Minnesota, Iowa, and Illinois.

20. The defendant is the United States of America, acting by and through the DOE. DOE is a cabinet-level department in the Executive Branch authorized to make contracts to accept and dispose of spent nuclear fuel and high-level radioactive waste generated by utilities, including Dairyland.

## STATEMENT OF FACTS

*The La Crosse Boiling Water Reactor*

21. Dairyland is the owner of what was LACBWR, a nuclear power plant located in Genoa, Wisconsin. LACBWR began operation in 1969 under the ownership of the Atomic Energy Commission ("AEC") as part of the program to demonstrate the viability of civilian

nuclear power generation.

22.     In 1973, AEC sold LACBWR to Dairyland.

23.     During its operation, LACBWR was fueled by enriched uranium, contained in assemblies, otherwise known as nuclear fuel.  Through the process of nuclear fission within the reactor vessel, the fuel would gradually become contaminated with other elements and lose its efficiency as reactor fuel.  Periodically, as the plant generated electricity, the used nuclear fuel was replaced with fresh nuclear fuel.  The removed fuel is referred to as "spent nuclear fuel," and was initially stored in the LACBWR plant in a water-filled storage pool adjacent to the reactor within the reactor building.

24.     Dairyland operated the LACBWR until 1987, when it permanently shut down the plant. At that time of shutdown, Dairyland's Nuclear Regulatory Commission ("NRC") license issued under 10 C.F.R. Part 50 was converted into a "possession only" license covering Dairyland's continued ownership and operation of a shut down nuclear reactor and spent nuclear fuel.

25.     At the time of shutdown in 1987, Dairyland discharged all remaining fuel assemblies from the LACBWR reactor pressure vessel into its spent fuel pool.

26.     Following the shutdown of LACBWR, Dairyland implemented plans to place LACBWR into the initial decommissioning stage known as "SAFSTOR," during which the facility was planned to be maintained in "mothball" status until the spent nuclear fuel is removed and the facility could be completely decommissioned. However, given DOE's breach of its contractual obligations under the Standard Contract, the removal of spent nuclear fuel, and the decommissioning of LACBWR was substantially delayed.

27.     As was determined in *Dairyland 1*, had DOE performed all of Dairyland's spent

nuclear fuel would have been removed by 1998. *Dairyland 1,* 90 Fed. Cl. at 635. Had that occurred, LACBWR would have been decommissioned and demolished, and Dairyland – which owns no other nuclear generating facilities – would have been out of the nuclear business by 2005. *Dairyland 3*, 2021 WL 5816004 at *9.

28. Dairyland maintained its spent nuclear fuel in the LACBWR spent fuel pool until 2012, when it was moved to an onsite dry cask storage facility, also known as an Independent Spent Fuel Storage Installation ("ISFSI"). Dairyland continues to store spent nuclear fuel at the ISFSI, and will continue to do so until DOE performs its obligations pursuant to the Standard Contract.

29. Since the shutdown in 1987, Dairyland engaged in decommissioning of LACBWR. Dairyland engaged in limited dismantlement activities between 1996 and 2005. Between 2005 and 2007, Dairyland removed and disposed of the LACBWR reactor pressure vessel.

30. In 2015, after all spent fuel had been moved to the ISFSI, Dairyland signed a contract with contractor Energy*Solutions* to complete decommissioning of LACBWR. Physical dismantlement and demolition of LACBWR was completed in 2019. Following the completion of final radiation surveys, in February 2023 the NRC released the LACBWR site – except for the ISFSI – for unrestricted use.

31. Dairyland continues to operate the ISFSI, and will continue to do so until DOE performs its obligation to remove SNF. Dairyland continues to maintain a 10 C.F.R. Part 50 license from the NRC solely in connection with the continued presence of spent nuclear fuel at the LACBWR ISFSI.

*The NWPA and Dairyland's 1983 Contract*

32. In 1982, Congress enacted the NWPA, 42 U.S.C. § 10222, which created a program for the removal and eventual disposal of spent nuclear fuel and high-level radioactive waste generated by commercial nuclear power plants. The NWPA codifies the government's responsibility for the removal and eventual disposal of spent nuclear fuel and high-level radioactive waste. Under the NWPA, utilities having nuclear generating units are responsible for the costs of this program.

33. Consistent with the NWPA, Dairyland entered into a contract with DOE on June 15, 1983.

34. Dairyland's contract provides that it would pay the government fees, which, together with fees paid by other utilities pursuant to similar contracts under the NWPA, would be sufficient for DOE to implement and operate a program for the timely removal of all the utilities' spent nuclear fuel and high-level radioactive waste, including Dairyland's.

35. The Federal Circuit has made clear that DOE's failure to remove spent nuclear fuel from utilities constitutes a breach of DOE's obligations under the Standard Contract. *Maine Yankee v. United States*, 225 F.3d 1336 (Fed. Cir. 2000).

## CLAIMS FOR RELIEF

### Count 1: Breach of Contract

36. The Standard Contract between Dairyland and DOE imposed an unconditional obligation on DOE to remove Dairyland's spent nuclear fuel and high-level radioactive waste beginning no later than January 31, 1998, in return for Dairyland's payment of specified fees.

37. Dairyland has paid in full all of the fees it was required to pay under the terms of the Standard Contract.

38. DOE has partially breached its contractual obligation to commence spent nuclear fuel removal by January 31, 1998, and has indicated no future date by which it plans to remove Dairyland's spent nuclear fuel.

39. As a result of DOE's partial breach of contract, Dairyland has suffered and will continue to suffer damages resulting from the additional costs to operate, secure, monitor and maintain the LACBWR facility and the ISFSI. These additional costs would not have been incurred had DOE performed its contractual obligations.

40. As a result of DOE's partial breach of contract, Dairyland has suffered and will continue to suffer damages related to the pursuit of alternative, off-site, interim storage of LACBWR's spent nuclear fuel. These additional costs have been incurred to mitigate the overall damages that Dairyland has incurred and will continue to incur as a result of DOE's breach, and would not have been incurred had DOE performed its contractual obligation.

41. As a result of DOE's partial breach of contract, Dairyland has suffered and will continue to suffer damages related to increased costs of decommissioning LACBWR due to DOE's partial breach of contract and the delay in decommissioning LACBWR.

42. Dairyland seeks to recover damages arising from DOE's failure to perform in an amount to be proven at trial in excess of $10,000,000, which results from its present partial breach of the Standard Contract. Should the DOE fail to meet its continuing obligation to remove Dairyland's spent nuclear fuel in the future, Dairyland reserves all rights to join claims for damages arising from those subsequent partial breaches in this action, or to assert new and separate partial breach claims in another action at that time.

**PRAYER FOR RELIEF**

WHEREFORE, Dairyland demands judgment in its favor against the defendant the United States granting Dairyland the following relief:

    (a)    Damages for breach of contract incurred after December 31, 2018;

    (b)    Interest and such costs, expenses and attorneys' fees as are available under applicable laws; and

    (c)    Such other relief as the Court deems just and proper.

Dated: December 27, 2024

Respectfully Submitted,

s/Christopher Tompkins
Christopher Tompkins
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654
(312) 840-8686
Email: ctompkins@jenner.com

*Counsel for Plaintiff Dairyland Power Cooperative*